# EXHIBIT B

# TERM PROMISSORY NOTE

**$150,000.00**

May 18, 2010

    **FOR VALUE RECEIVED, HAYDEN-HARNETT, LLC**, a New York limited liability company (the "Maker"), hereby promises to pay in accordance with the terms hereof to JOANN GLUSSICH (together with her assigns, the "Holder") at such place as the Holder may designate in writing from time to time, in lawful money of the United States of America and in immediately available funds, the principal amount of ONE HUNDRED FIFTY THOUSAND AND 00/100 UNITED STATES DOLLARS (US$150,000.00) (or so much thereof as shall not have been prepaid), together with interest thereon calculated from the date hereof in accordance with the terms of this Promissory Note (as amended, modified and supplemented from time to time, this "Note").

    **ACCRUAL OF INTEREST.** Interest shall accrue on the unpaid principal amount of this Note from the date of this Note, or, in the event of any re-borrowing of the principal amount hereof, from the date of such re-borrowing, until such principal amount is paid in full at a rate per annum equal to twenty-four percent (24%). Interest shall be calculated on the basis of a 360-day year of twelve 30-day months. In no event shall the interest rate on this Note exceed the maximum interest rate permitted by applicable law.

    **PAYMENT OF PRINCIPAL AND INTEREST ON THE NOTE; PRE-PAYMENTS.** Provided no Event of Default (as defined below) has occurred and is continuing, the term of this Note shall be for thirty (30) days from the date hereof (the "Initial Due Date"), when the full amount of all outstanding principal, all accrued and unpaid interest thereon and all fees shall be due and payable; provided, however, that upon the timely request of Maker (which shall be made, if at all, in writing to Holder on or prior to the Initial Due Date or any subsequent Due Date (as defined below), if applicable), and with the consent of Holder, which consent shall be made in her sole and exclusive discretion, Maker shall have the right to re-borrow not less than the entire principal amount of this Note for an additional thirty (30) day period following the end of the Initial Due Date or any applicable Due Date, in which event, provided no Event of Default has occurred and is continuing, the term of each such borrowing shall be for thirty (30) days from the date of the preceding Due Date (each, a "Due Date", and collectively, with the Initial Due Date, the "Due Dates"), when the full amount of all outstanding principal, all accrued and unpaid interest thereon, and all fees shall be due and payable. This Note may be prepaid, in whole or in part, at any time, without penalty or premium with any such pre-payments being first applied to accrued interest and then to outstanding principal.

    **DEFAULT RATE OF INTEREST; LATE CHARGES.** If any amounts due hereunder remain unpaid after the Initial Due Date or any Due Date, as applicable, or after the acceleration of the amounts due hereunder, then the interest rate on the principal amount of this Note shall be increased to a rate that is equal to five (5%) percent above the interest rate then in effect. All such increases may be applied retroactively to the date of the occurrence of the Event of Default. The Maker agrees that the default rate payable to the Holder hereunder is a reasonable estimate of the Holder's damages and is not a penalty. In the event that any payment, including, without limitation, interest, principal or fees, required to be made by the Maker in connection with this Note shall not be received by the Holder when due, the Holder may charge and, if so charged, the Maker shall pay, upon demand, a late charge of five ($.05) cents for each ($1.00) dollar of such delinquent payment,

1



for the purpose of defraying the expenses that are incidental to the handling of such delinquent payment.

**COLLATERAL SECURING REPAYMENT OF THE NOTE.** The payment and performance of this Note is secured by: (a) a security interest in all present and future personal property owned by the Maker (the "Collateral") created under and pursuant to that certain Security Agreement from the Maker to the Holder dated of even date herewith (the "Security Agreement"); (b) the joint and several absolute, irrevocable, and unconditional guaranties by Benjamin Harnett and Toni Hacker (individually, a "Guarantor", and collectively, the "Guarantors") of the payment and performance of the Maker's obligations under this Note and the Security Agreement and all other present and future indebtedness due or to become due the Holder by the Maker (the "Guaranty" or "Guaranties"); and (c) such other collateral as may now or hereafter be given, pledged, or assigned to the Holder by the Maker as security for the payment and performance of the Note and Security Agreement.

**REPRESENTATIONS AND WARRANTIES.** The Maker hereby represents and warrants to the Holder that:

(a)     It is a limited liability company, duly organized, validly existing, and in good standing under the laws of the State of New York, has the corporate power and authority to own its assets and to transact the business in which it is now engaged or proposes to be engaged, is duly qualified and is in good standing under the laws of each other jurisdiction in which such qualification is required.

(b)     It has full power and authority to execute and deliver this Note and the Security Agreement and to incur the obligations provided for herein, and the Note has been duly authorized by all proper and necessary company action. No consent or approval of any governmental or administrative authority, instrumentality, or agency is required as a condition to the validity of this Note.

(c)     This Note is legal, valid, and contains binding obligations of the Maker enforceable against it in accordance with its terms, subject to the effect of any applicable Bankruptcy, insolvency, reorganization or moratorium or similar laws affecting the rights of creditors generally and general principles of equity.

(d)     The execution, delivery and performance by the Maker of this Note does not and will not: (i) violate or contravene any provisions of any existing law, statute, rule, regulation or ordinance or the certificate of formation or the operating agreement of the Maker, (ii) violate or contravene any provision of any order or decree of any court, governmental authority, bureau or agency to which the Maker or any of its properties or assets is subject, (iii) violate or contravene any provision of any material mortgage, indenture, security agreement, contract, undertaking or other agreement or instrument to which the Maker is a party or which purports to be binding upon it or any of its properties or assets, or (iv) result in the creation or imposition of any lien, encumbrance or security interest in, any of its properties pursuant to the provisions of any mortgage, indenture, security agreement, contract, undertaking or other agreement or instrument.

2



**EVENTS OF DEFAULT.** The Maker will be in default under this Note upon the occurrence of any of the following events (each, an "Event of Default"):

(a)     The failure of the Maker to pay principal or interest on the date after the date it is due hereunder.

(b)     The failure of the Maker to perform or comply with any of the agreements, conditions, covenants, provisions or stipulations contained in this Note or in the Security Agreement securing this Note, and the continuance of such failure uncured for five (5) days after written notice specifying such failure and requesting that it be cured is given by the Holder to the Maker. The notice and cure provision contained herein shall not apply to a default in the payment of the monetary amounts due hereunder.

(c)     The occurrence of an event of default under any document securing this Note or any other document delivered to the Holder in connection with this Note by the Maker and/or any other person or entity that is liable, directly or indirectly, for the payment of this Note, subject to any applicable notice and cure periods contained in any such documents.

(d)     Any warranty or representation contained in this Note or other information furnished by or on behalf of the Maker or any Guarantor proves to have been false in any material respect when made or furnished and such falsity would have a material adverse effect on the Maker's or Guarantor's assets, operations or condition, financial or otherwise.

(e)     Any assignment for the benefit of creditors made by either Maker, in general or with respect to the Collateral.

(f)     The appointment of a receiver, liquidator or trustee for Maker or of any portion of the Collateral; the filing by or against Maker of any petition for bankruptcy pursuant to the Federal Bankruptcy Code or any similar federal or state statute; or the institution of any proceedings for the dissolution or liquidation of the Maker.

(g)     The occurrence of any of the events set forth in subsection (e) or (f) of this paragraph with respect to any Guarantor of this Note, or a default by any such Guarantor under any of the terms of its Guaranty.

(h)     Any change in the ownership or control of the Maker or the death or disability of any Guarantor.

(I)     Any default by Maker or Guarantors with respect to any indebtedness of Maker to any institutional lender, including, without limitation, Flushing Savings Bank, FSB ("FSB"), or to the United States Small Business Administration under the terms of the two (2) United States Small Business Administration guaranteed loans, dated February 21, 2008, in the original principal amounts of $60,000 and $86,000, respectively, made by FSB.

(j)     The filing, entry or issuance of any judgment, execution, garnishment, attachment, distraint, or lien against the Maker, any Guarantor or any of their property, other than the currently existing secured lien against the Maker in favor of FSB, or the entry of any order enjoining or

3



restraining the Maker or any Guarantor and/or restraining or seizing any property of the Maker or any Guarantor.

(k)     The existence of any liens for taxes due with respect to the Maker or any of the Collateral.

(l)     Neil Goldstein ("Goldstein") shall cease, for any reason, to be engaged as a business consultant for the Maker or shall cease to have co-check writing privileges with Holder with respect to Account No. 062114514 at H.S.B.C. Bank USA, N.A.

Upon any Event of Default, the entire amount of interest, principal, and any other sums due under this Note will, at the Holder's option, become due and payable immediately, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by the Maker; provided, however, that in the event of an occurrence of an Event of Default by reason of paragraph (l) immediately above which results from the inability of Goldstein to continue acting as a business consultant to the Maker by reason of any physical or mental disability or from Goldstein's voluntary termination of his business relationship with the Maker (a "Goldstein Termination Event"), all amounts due and owing by the Maker to the Holder under this Note shall be due and owing not later than ten (10) days following a Goldstein Termination Event (the "Payment Extension Period") provided that the Maker shall have notified the Holder, in writing, of the occurrence of a Goldstein Termination Event within 24 hours of the occurrence of such event. Anything to the contrary set forth in the immediately preceding sentence notwithstanding, in no event shall the Payment Extension Period extend beyond the applicable Due Date of this Note.

**EXPENSES OF COLLECTION.** In the event that the Holder institutes any action for the collection of any sum due hereunder, or otherwise incurs any expenses of collection, the Maker shall be responsible for the payment of said costs of collection, together with reasonable attorney's fees.

**INCORPORATION OF TERMS OF SECURITY AGREEMENT.** The terms, covenants and conditions of the Security Agreement are hereby made a part of this Note, to the extent and with the same effect as if more fully set forth herein, and the Maker does hereby covenant and promise to abide by and comply with each and every term, covenant and condition set forth in this Note and the Security Agreement.

**RIGHTS CUMULATIVE.** The rights and remedies of the Holder under this Note, the Security Agreement and the Guaranties are cumulative and concurrent and, at the sole discretion of the Holder, may be pursued singly, successively, or together and exercised as often as the Holder desires. Time is of the essence under this Note. The failure of the Holder to exercise any such right or remedy shall in no event be taken as a waiver or release. Nothing in this Note will be taken as limiting the Holder to the remedies mentioned above.

**MISCELLANEOUS.**

**Remedies of the Holder.** The remedies of the Holder, as provided herein, shall be cumulative and concurrent and may be pursued singly, successively or together, at the sole discretion of the Holder, and may be exercised as often as occasion therefor shall occur, and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof. The

4



Holder shall have the right to take any action that it deems appropriate, without the necessity of resorting to any collateral securing this Note.

**No Additional Waiver Implied by One Waiver.** The Holder shall not be deemed to have waived any of its rights or remedies hereunder unless such waiver is in writing and signed by the Holder and then only to the extent specifically set forth therein. A waiver in one event shall not be continuing or a bar to or waiver of a subsequent event. In the event that any agreement contained in this Note is breached by the Maker and thereafter waived by the Holder, such waiver shall be limited to the actual breach so waived and shall not be deemed to waive any other breach hereunder.

**Liability Absolute.** The Maker waives demand, notice, presentment, protest, demand for payment, notice of dishonor, and notice of protest of this Note. The Maker consents to any and all extensions of time, renewals, waivers, or modifications that may be granted by the Holder with respect to the payment or other provisions of this Note, and to the release of any collateral, without substitution. The Maker agrees that makers, endorsers, guarantors and sureties may be added or released without notice and without affecting any liability hereunder. The liability of the Maker shall not be affected by the failure of the Holder to perfect or otherwise obtain or maintain the priority or validity of any security interest in any collateral. The liability of the Maker shall be absolute and unconditional and without regard to the liability of any other party hereto.

**No Usurious Amounts.** Anything herein contained to the contrary notwithstanding, the Maker does not agree, and shall not be obligated, to pay interest hereunder at a rate which is in excess of the maximum rate permitted by law. If, by the terms of this Note, the Maker is at any time required to pay interest at a rate which is in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and the portion of all prior interest payments in excess of such maximum rate shall be applied to, and shall be deemed to have been payments in reduction of, the outstanding principal balance.

**Partial Invalidity.** The unenforceability or invalidity of any one or more provisions of this Note shall not render any other provisions herein unenforceable or invalid. If any provision of this Note shall contravene, or be held to be invalid under, the laws of any jurisdiction, this Note shall be construed as if it did not contain such provision, and the rights, remedies, warranties, representations, covenants and provisions hereof shall be construed and enforced accordingly in such jurisdiction and shall not in any manner affect such provision in any other jurisdiction, or any other provision of this Note.

**Binding Effect.** The covenants, conditions and agreements contained in this Note shall be binding on, and the benefits thereof shall inure to, the respective parties hereto and their respective heirs, executors, administrators, successors and assigns; provided that this Note cannot be assigned by the Maker without the prior express written consent of the Holder.

**No Oral Modifications.** This Note may not be waived, changed, modified, discharged, or terminated orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification, discharge, or termination is sought.

**Waiver of Jury Trial. THE MAKER AND, BY ITS ACCEPTANCE HEREOF, THE HOLDER, EACH HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE**

5



WHICH IS TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF THE RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY THE MAKER AND THE HOLDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. THE MAKER AND THE HOLDER ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

**New Jersey Law Governs.** This Note and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey (without giving effect to New Jersey's principles of conflicts of law). The Maker hereby irrevocably submits to the nonexclusive jurisdiction of any New Jersey state court sitting in the County of Bergen or any federal court sitting in the County of Essex, New Jersey over any suit, action or proceeding arising out of or relating to this Note, and the Maker hereby agrees and consents that, in addition to any methods of service of process as are provided for under applicable law, all service of process in any such suit, action or proceeding in any New Jersey s state court sitting in the County of Bergen or any federal court sitting in the County of Essex, New Jersey may be made by certified or registered mail, return receipt requested, directed to the Maker at the address indicated in the Security Agreement, and service so made shall be complete five (5) days after the same shall have been so mailed.

**IN WITNESS WHEREOF,** the sole members of the Maker have hereunto set their hands and seals the day and year first above written.

**WITNESS:**                                    **HAYDEN-HARNETT, LLC**

_____                 By:_____
                                                          BENJAMIN HARNETT, Member

**WITNESS:**

_____                 By:_____
                                                          TONI HACKER, Member

STATE OF NEW YORK     )
                                        : SS:
COUNTY OF                    )

On the 18 day of May, 2010, before me personally came BENJAMIN HARNETT and TONI HACKER to me known to be the persons who executed this instrument, and who, being by me

6

duly sworn, did depose and say that they executed the foregoing instrument as the sole members of and on behalf of HAYDEN-HARNETT, LLC, as their voluntary act and deed.

Notary Public or
Attorney-at-Law of the State of New York

SRIHARI VUTUKURI
NOTARY PUBLIC-STATE OF NEW YORK
No. 01VU6214619
Qualified In Nassau County
My Commission Expires December 14, 2013

7