**EXHIBIT C**

# SECURITY AGREEMENT

THIS SECURITY AGREEMENT, made this 18th day of May, 2010, by HAYDEN-HARNETT, L.L.C., a New York limited liability company ("Borrower") to JOANN GLUSSICH, an individual ("Lender").

**SECTION 1. Obligations Secured, Credit Agreement.** This Security Agreement and the security interests granted hereby are given as security for the payment and performance of all of Borrower's obligations and agreements, whether now existing or hereafter arising:

**(a)** Under that certain Term Promissory Note executed by Borrower to Lender in the principal sum of One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars, of even date herewith (the "Note"), including, without limitation, the payment of all principal, interest and other sums provided for in the Note, or in any extensions, renewals, reborrowings or modifications of, or substitutions for, the Note; or

**(b)** Under this Security Agreement or any other loan document forming a part of the loan transaction evidenced by the Note (collectively, the "Loan Documents").

The obligations and agreements referred to in the preceding subsections (a) and (b) are hereinafter referred to individually as the "Obligation" and collectively as the "Obligations". All capitalized terms used in this Security Agreement and not otherwise defined herein shall have the meanings stated in the Loan Documents.

**SECTION 2. Grant of Security Interests.** As security for the payment and performance of all of the Obligations, as hereinbefore defined, whether presently existing or hereafter arising, Borrower hereby pledges, transfers and assigns to Lender, and grants to Lender a security interest in, all of the following property of Borrower (whether now owned or hereafter acquired), and in all accessions and additions thereto, replacements and substitutions therefor, and proceeds and products thereof.

**(a)** All "Accounts", which term shall include, in addition to the definition thereof contained in the Uniform Commercial Code as in effect from time to time in the State of New Jersey (the "UCC"), all obligations of any kind that at any time are due or owing to Borrower, and all rights of Borrower to receive payment or any other consideration (whether classified under the UCC or the law of any other state as accounts, accounts receivable, contract rights, chattel paper, general intangibles, or otherwise), including, without limitation, invoices, contract rights, accounts receivable, general intangibles, proceeds of life insurance policies, choses-in-action, notes, drafts, acceptances, instruments and all other debts, obligations and liabilities in whatever form owing to Borrower, together with all security for any thereof, and all of Borrower's rights to goods sold (whether delivered, undelivered, in transit or returned) represented by any thereof, and all cash and non-cash proceeds of any and all of the foregoing;

**(b)** All "Equipment", which term shall include, in addition to the definition thereof contained in the UCC, all of Borrower's equipment, machinery, furniture, fixtures, motor vehicles, parts, supplies, and tools, and all other tangible personal property that is similar to any



of the foregoing;

**(c)** All "Inventory", which term shall include, in addition to the definition thereof contained in the UCC, all goods, merchandise or other property owned by Borrower for sale or lease (including any thereof that is temporarily out of the possession of Borrower or on consignment from Borrower), all documents of title relating to any thereof, and all returns upon accounts; all raw materials and work in process; and all materials and supplies of any kind or description that are used or usable in connection with the manufacture, packaging, shipping, advertisement, sale or finishing of any of the foregoing;

**(d)** All trade names, trademarks, trademark registrations, patents, patent applications and licenses, and other licenses in which Borrower has an interest, and all other intangible personal property that is similar to any of the foregoing; and

**(e)** All claims of Borrower against third parties for loss of or damage to any one or more of the items in subsections (a), (b), (c), or (d) above; all documents of title, policies or certificates of insurance, insurance proceeds, proceeds of condemnation or other seizure, securities, chattel paper, and other documents and instruments evidencing or pertaining to any of such items; all files, correspondence, computer programs, tapes, discs, and related data processing software owned by Borrower or in which Borrower has an interest and which contains information identifying any of such items or identifying any account debtor or the amount owed by same, or which would otherwise be necessary or helpful in the realization on any of such items; and all guarantees, security and liens for payment of any accounts.

The property described in subsections (a), (b), (c), (d), and (e) above, together with all accessions, additions, replacements, substitutions, proceeds and products as aforesaid, is referred to collectively hereinafter as the "Collateral".

Borrower shall execute and deliver such financing statements and other documents (in form and substance that are satisfactory to Lender), and take such other actions, as Lender may request from time to time in order to create, perfect or continue the security interests provided for above under the UCC or other laws of the State of New Jersey or under any other state or federal law.

**SECTION 3. Representations and Warranties.** The representations and warranties of Borrower set forth in the Loan Documents are incorporated herein by reference and confirmed by Borrower as if set forth in full in this Agreement. Borrower hereby makes the following additional representations and warranties, all of which shall survive until full and final payment and performance of all of the Obligations and so long as Lender has any commitment to make advances under the Loan Documents.

**(a) Accounts.** The most recent list of Accounts of Borrower that has been delivered to Lender is complete and contains an accurate aging thereof. Except as otherwise



specified by Borrower to Lender in writing: all of said Accounts are bona fide and legally enforceable obligations, and none is subject to any defense, counterclaim or setoff or requires any further act on Borrower's part to make it owing by the account debtor; none of said Accounts includes any conditional sale, consignment or other sale on any basis other than that of absolute sale in the ordinary and usual course of business; and none of said Accounts is subject to any agreement whereby a deduction or discount may be claimed other than regular discounts in the usual course of Borrower's business.

**(b)** **Inventory.** Borrower's Inventory, as reflected by its most recent balance sheet delivered to Lender, consists of items of a quantity and quality that are usable or saleable in the ordinary course of its business. The value of obsolete items, items below standard quality and items in the process of repair have been written down to realizable market value, or adequate reserves have been provided therefor, and the values carried on Borrower's balance sheet are set at the lower of cost or market, in accordance with generally accepted accounting principles consistently applied.

**(c)** **Books and Records.** Borrower maintains its books and records relating to its Accounts and its Inventory at its principal place of business as identified in subparagraph (e) below.

**(d)** **Location of Collateral.** None of the Equipment or Inventory constituting a part of the Collateral pursuant to this Agreement is or will be, or has been during the six (6) months preceding the execution of this Agreement, located in or on any premises other than at the principal place of business of Borrower as disclosed in subparagraph (e) or at its previous principal place of business.

**(e)** **Places of Business.** The principal place of business and chief executive office of Borrower is located at 44 Ash Street, Brooklyn, NY 11222.

**(f)** **Other Names.** Borrower has not, within the five (5) years preceding the date of this Agreement (i) changed its company name, (ii) used any company or alternate name other than the name stated at the beginning of this Agreement, or (iii) merged or consolidated with, or acquired the assets of, any other entity.

**(g)** **Title and Liens.** Borrower has good and marketable title to all of the Collateral as sole owner thereof, free and clear of any assignment or lien except the liens in favor of Flushing Savings Bank, FSB pursuant to the terms and conditions of those two (2) United States Small Business guaranteed loans, dated February 21, 2008, in the original principal amounts of $60,000 and $86,000, respectively (the "SBA Loans"). Subject to the terms and conditions of the SBA Loans, none of the Collateral is subject to any prohibition against encumbering, pledging, hypothecating or assigning the same or requires any notice or consent in connection therewith.

3



**SECTION 4. Affirmative Covenants.** All affirmative covenants of Borrower as set forth in the Loan Documents are hereby incorporated by reference and confirmed by Borrower as if set forth in full in this Agreement. Borrower hereby further covenants and agrees that, until full and final payment and performance of all of its Obligations and so long as Lender has any commitment to make advances to Borrower or the Obligors pursuant to any Loan Document, Borrower shall, unless Lender shall otherwise consent in writing:

(a) **Liability and Property Insurance.** Maintain, at Borrower's expense, public liability and third party property damage insurance with such insurers, in such amounts and with such deductibles as are satisfactory to Lender, and maintain, at Borrower's expense, insurance on the Collateral with such insurers, against such risks, in such amounts and with such deductibles as are satisfactory to Lender (including, without limitation, insurance against fire, explosion, boiler damage, theft, burglary, spoilage, pilferage, loss in transit and all other hazards and risks ordinarily insured against by other owners or users of such properties in similar businesses), which insurance shall be evidenced by policies:

(i) in form and substance that are satisfactory to Lender,

(ii) for such insured values as Lender may require in order to replace the property in the event of actual or constructive total loss,

(iii) designating Lender and its assignees as additional co-insureds or loss payees as their interests may appear from time to time,

(iv) containing a "breach of warranty clause", whereby the insurer agrees that a breach of the insuring conditions or any negligence of Borrower or any other person shall not invalidate the insurance as to Lender and its assigns, and

(v) requiring at least thirty (30) days' prior written notice to Lender and its assigns before any cancellation or any material change shall be effective;

Upon demand, deliver to Lender the original or a certified copy of each policy evidencing any insurance required by this Section 4, together with evidence of payment of all premiums therefor;

In the event of loss or damage, forthwith notify Lender and file proofs of loss satisfactory to Lender with the appropriate insurer; and

Immediately upon receipt, endorse and deliver any insurance proceeds to Lender for any policies on which Lender is a loss payee.

(b) **Supplemental Disclosure.** From time to time, supplement or amend this Agreement or any statement, schedule or document that has been provided to Lender with respect to any matter which, if existing or occurring at the date of this Agreement, would have been required to be set forth or described in any such statement, schedule or document and which

4



is necessary to correct information which has been rendered inaccurate thereby.

**(c) Accounts and Inventory.** From time to time, as requested by Lender, deliver in form and content satisfactory to Lender (i) an updated list of Borrower's Accounts, and (ii) schedules of Borrower's Inventory and Equipment.

**(d) Change of Name or Business.** Immediately notify Lender if (i) there is any change in the location of books and records relative to the Accounts and Inventory stated in Subsection 3(c) of this Agreement, (ii) any Equipment or Inventory constituting part of the Collateral becomes located in or on any premises other than the principal place of business of Borrower as stated in Subsection 3(e) of this Agreement, (iii) the location of the principal place of business or chief executive office of Borrower as stated in Subsection 3(e) of this Agreement is changed, or (iv) Borrower conducts any of its business or operations in or from any new office or location.

**(e) Compliance with Laws, etc.** Comply with all acts, rules, regulations, orders, decrees and directions of any governmental authority, applicable to the Collateral or any part thereof or to the operation of the Borrower's business.

**(f) Payment of Obligations.** Pay promptly when due, all taxes, assessments, and governmental charges or levies imposed upon the Collateral or in respect of Borrower's income or profits therefrom, as well as all claims of any kind (including claims for labor, materials and supplies).

**(g) Limitation on Liens on Collateral.** Other than as described in Subsection 3(g), will not create, permit or suffer to exist, and will defend the Collateral against and take such other actions as are necessary to remove, any lien, security interest, encumbrance, charge, claim or right, in or to the Collateral, and will defend the right, title and interest of the Lender in and to any of the Borrower's rights under the Collateral and in and to the proceeds and products thereof against the claims and demands of all persons whomsoever.

**(h) Labor and Environmental Compliance.** Will continue to operate its business in compliance with all applicable provisions of the Federal Fair Labor Standards Act, as amended, and with all applicable provisions of federal, state and local statutes and ordinances dealing.

**SECTION 5. Additional Covenants.** Borrower hereby further covenants and agrees that, until full and final payment and performance of all of the Obligations, Borrower shall not, unless Lender shall otherwise consent in writing:

**(a) Transfer of Accounts.** Sell, assign, transfer, discount or otherwise dispose of any Accounts or any promissory note or other instrument payable to Borrower, except for collection without recourse in the ordinary course of business.

**(b) Transfer of Equipment or Inventory.** Sell, assign, lease, transfer or



otherwise dispose of any substantial part of the Equipment or Inventory, other than by sales of Inventory in the ordinary course of business or due to obsolescence or replacement.

**(c)** **Sale of Inventory.** Sell any of the Inventory on a bill-and hold, guaranteed sale, sale-and-return, sale on approval or consignment basis, or any other basis subject to a repurchase obligation or return right.

**(d)** **Settlements Relation to Collateral.** Compromise, settle or adjust any claim in a material amount relating to the Collateral.

**(e)** **Removal of Collateral.** Remove, or cause or permit to be removed, any of the Collateral from its present location, other than by sales of Inventory in the ordinary course of business or due to obsolescence or replacement.

**(f)** **Change of Location or Name, Etc.** Change any of the following: (i) the location of the principal place of business or chief executive office of Borrower, (ii) the name under which Borrower conducts any of its business or operations, (iii) terminate or reduce the responsibilities or authority of Neil Goldstein, or (iv) provide or authorize any party other than Neil Goldstein and Lender check writing, withdrawal or signatory powers over Account No. 062114514, at H.S.B.C. Bank USA, N.A..

**SECTION 6. Additional Rights of Lender.**

**(a)** Upon the occurrence of an Event of Default, as defined herein, Borrower hereby constitutes and appoints Lender (and any designee of Lender, with full power of substitution) its true and lawful attorney and agent in fact, to take any or all of the actions described below in Lender's or Borrower's name and at Borrower's expense, and Borrower hereby ratifies and confirms all actions so taken:

**(i)** **Evidence of Liens.** Lender may execute such financing statements and other documents and take such other actions as Lender deems reasonably necessary or proper in order to create, perfect or continue the security interest and other liens provided for by this Agreement, and Lender may file the same (or a photocopy of this Agreement or of any financing statement signed by Borrower) in any appropriate governmental office.

**(ii)** **Preservation of Collateral.** Lender may take any and all action that it deems necessary or proper to preserve its interest in the Collateral, including, without limitation, the payment of debts of Borrower which might impair the Collateral or Lender's security interest therein, the payment of obligations of Borrower to any senior lienholder, the purchase of insurance on the Collateral, the repair or safeguarding of the Collateral, or the payment of taxes, assessments or other liens thereon. All sums so expended by Lender shall be added to the Obligations, shall be secured by the Collateral, and shall be payable on demand with interest from the date that such sums are expended at the rate that is applicable from time to time to overdue principal of the Note.

6



(iii) **Lender's Right to Cure.** In the event that Borrower fails to perform any of its Obligations, then Lender may perform the same, but shall not be obligated to do so. All sums so expended by Lender shall be added to the Obligations, shall be secured by the Collateral, and shall be payable on demand with interest from the date that such sums are expended at the rate that is applicable from time to time to overdue principal of the Note.

(iv) **Verification of Accounts.** Lender may test the verifications of any and all Accounts in any manner and through any medium that Lender considers to be advisable, and Borrower shall render any necessary assistance in connection therewith.

(v) **Proofs of Loss.** Lender may file proofs of loss, with respect to any of the Collateral, with the appropriate insurer and may endorse any checks or drafts constituting insurance proceeds.

(vi) **Collections; Modification or Terms.** Upon the occurrence and continuance of any Event of Default, Lender may demand, sue for, collect and give receipts for any money, instruments or property payable or receivable on account of or in exchange for any of the Collateral, or make any compromises that it deems necessary or proper, including, without limitation, extending the time of payment, permitting payment in installments, or otherwise modifying the terms or rights relating to any of the Collateral, all of which may be effected without notice to or consent by Borrower and without otherwise discharging or affecting the Obligations, the Collateral or the security interest granted under this Agreement.

(vii) **Notification of Account Debtors.** Borrower, at the request of Lender, shall notify the Account debtors of Lender's security interest in its Accounts. Upon the occurrence and continuance of any Event of Default, Lender may notify the Account debtors on any of the Accounts to make payment directly to Lender, and Lender may endorse all items of payment received by it which are payable to Borrower. Until such time as Lender elects to exercise its right of notification, Borrower is authorized to collect and enforce the Accounts.

(viii) **Endorsements.** Upon the occurrence and continuance of any Event of Default, Lender may endorse Borrower's name on checks, notes, acceptances, drafts, invoices, bills of lading, and any other documents or instruments requiring Borrower's endorsement, and properly account to Borrower for all of such transactions.

(b) Borrower covenants and agrees that the power of attorney granted by the foregoing subsection (a) is coupled with an interest and shall be irrevocable so long as this Agreement is in force; that said powers are granted solely for the protection of Lender's interest and that Lender shall have no duty to exercise any thereof; that the decision whether to exercise any of such powers, and the manner of such exercise, shall be solely within Lender's discretion; and that neither Lender nor any of its agents or designees shall be liable for any act of omission or commission, or for any mistake or error of judgment, in connection with any such power.

**SECTION 7. Events of Default.** Any of the following shall constitute an Event of Default under this Agreement:

(a) If Borrower fails to pay, when due, any principal or interest due on the Note or any other amount payable under the Note or any other Loan Document;

(b) If any other Event of Default, as defined in the Note, occurs;

(c) If any representation or warranty made by Borrower in this Agreement proves to have been incorrect in any material respect when made;

(d) If Borrower fails to perform or observe any term, covenant or agreement on its part to be performed or observed as contained in this Agreement and the continuance of such failure uncured for five (5) days after written notice specifying such failure and requesting that it be cured is given by Lender to Borrower; provided, that no such notice shall be required in connection a failure to perform or observe any term, covenant or agreement set forth in Section 4(g), 5(a), 5(c) or 5(f); or

(e) If a default occurs under any other agreement, undertaking or instrument relating to any Obligation of Borrower to Lender.

**SECTION 8. Remedies.** Upon the occurrence of any Event of Default, Lender shall be entitled to exercise forthwith all of the rights and remedies that are provided for in the Note, this Agreement and the other Loan Documents, subject to any applicable cure provisions, and all rights and remedies of a secured party under the UCC or other applicable law. In addition, Lender shall be entitled to the rights and remedies, and Borrower shall have the obligations, set forth below:

(a) Lender may enter upon the premises where any of the Collateral is located and take possession of and, at Lender's option, remove any or all thereof.

(b) Upon notice from Lender, Borrower shall promptly, at its expense, assemble any or all of the Collateral and make it available at a reasonably convenient place designated by Lender.

(c) Lender may, with or without judicial process, sell, lease or otherwise dispose of any or all of the Collateral at public or private sale or proceedings, by one or more contracts, in one or more parcels, at the same or different times and places, with or without having the Collateral at the place of sale or other disposition, to such persons or entities, for cash or credit or for future delivery, and upon such other terms, as Lender may, in its discretion, deem best in each such matter. The purchaser of any of the Collateral at any such sale shall hold the same free of any equity of redemption or other right or claim of Borrower, all of which, together with all rights of stay, exemption or appraisal under any statute or other law now or hereafter in effect, Borrower hereby unconditionally waives to the fullest extent permitted by law. If any of the Collateral is sold on credit or for future delivery, Lender shall not be liable for the failure of the purchaser to pay for same and, in the event of such failure, Lender may resell such Collateral.

8



**(d)** Borrower further agrees that notice of the time after which any private sale or other intended disposition or action relating to any of the Collateral is to be made or taken, shall be deemed commercially reasonable notice thereof, and shall satisfy the requirements of any applicable statute or other law, if such notice is delivered or mailed (by ordinary first class mail, postage prepaid) not less than five (5) business days prior to the date of the sale, disposition or other action to which the notice relates. Lender shall not be obligated to make any sale or other disposition or to take other action pursuant to such notice and may, without other notice or publication, adjourn or postpone any public or private sale or other disposition or action by announcement at the time and place fixed therefor, and such sale, disposition or action may be held or accomplished at any time or place to which the same may be so adjourned or postponed.

**(e)** Lender may purchase any or all of the Collateral at any public sale and may purchase at private sale any of the Collateral that is of a type that is customarily sold in a recognized market or the subject of widely distributed price quotations or as may be further permitted by law. Lender may make payment of the purchase price for any Collateral by credit against the then outstanding amount of the Obligations.

**(f)** Lender may, at its discretion, retain any or all of the Collateral and apply the same in satisfaction of part or all of the Obligations.

**(g)** Any cash proceeds of the sale, lease or other disposition of the Collateral shall be applied as follows:

**First:** To the expenses of collecting, enforcing, safeguarding, holding and disposing of the Collateral, and to other expenses of Lender in connection with the enforcement of this Agreement, the Note or any other Loan Document, including, without limitation, court costs and the reasonable fees of attorneys, accountants and appraisers;

**Second:** Any surplus then remaining, to the payment of principal and interest of the Obligations, in such order as Lender elects; and

**Third:** Any surplus then remaining, to Borrower or whoever may be lawfully entitled thereto.

**(h)** Borrower agrees that, in connection with any action or proceeding arising out of or relating to the Obligations, this Agreement or the Collateral:

**(i)** BORROWER WAIVES THE RIGHT TO A TRIAL BY JURY AND ALL DEFENSES AND RIGHTS TO INTERPOSE ANY SETOFF OR COUNTERCLAIM OF ANY NATURE, EXCEPT AND ONLY TO THE EXTENT THAT SUCH DEFENSE PERTAINS TO THE EXISTENCE OF AN EVENT OF DEFAULT;

**(ii)** This Security Agreement and the rights and obligations of the



parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey (without giving effect to New Jersey's principles of conflicts of law). The Borrower hereby irrevocably submits to the nonexclusive jurisdiction of any New Jersey state court sitting in the County of Bergen or any federal court sitting in the County of Essex, New Jersey over any suit, action or proceeding arising out of or relating to this Security Agreement and the Borrower hereby agrees and consents that, in addition to any methods of service of process as are provided for under applicable law, all service of process in any such suit, action or proceeding in any New Jersey s state court sitting in the County of Bergen or any federal court sitting in the County of Essex, New Jersey may be made by certified or registered mail, return receipt requested, directed to the Borrower at the address indicated in this Agreement, and service so made shall be complete five (5) days after the same shall have been so mailed.

(iii) Borrower agrees that all of the Collateral constitutes equal security for all of the Obligations, and agrees that Lender shall be entitled to sell or otherwise deal with any or all of the Collateral in any order or simultaneously, as Lender shall determine in its sole discretion, free of any requirement for the marshalling of assets or other restriction upon Lender in dealing with the Collateral.

**SECTION 9. Costs and Expenses.** Borrower agrees to pay on demand:

(a) all reasonable costs and expenses (including, without limitation, the reasonable fees and out-of-pocket expenses of counsel for Lender) in connection with the preparation, execution, delivery and administration of this Agreement, the Note, the other Loan Documents and the transactions contemplated hereby and thereby, and any other documents delivered in connection herewith; and

(b) all of Lender's reasonable expenses in collecting, enforcing, safeguarding, holding and disposing of the Collateral, and all other losses, costs and expenses incurred by Lender in connection with the enforcement of this Agreement, the Note or any other Loan Document, or in connection with legal advice relating to the rights or responsibilities of Lender under any thereof (including in each case, without limitation, the reasonable fees and out-of-pocket expenses of attorneys, accountants and appraisers).

With respect to any amount advanced by Lender and required to be reimbursed by Borrower pursuant to any provision of this Agreement, Borrower shall also pay to Lender interest on such amount at the rate that is applicable from time to time to overdue principal of the Note, from the date of the expenditure to the date of reimbursement.

Borrower's obligations under this Section 9 shall survive the payment of the Note and the other Obligations.

**SECTION 10. Amendments; Waiver; Consent.** No amendment or waiver of any



provision of this Agreement, nor any consent to any departure by Borrower therefrom, shall in any event be effective unless the same shall be in writing and signed by Lender, and such waiver or consent shall then be effective only in the specific instance and for the specific purpose for which given.

**SECTION 11.** <u>**Notices.**</u> All notices given hereunder shall be in writing and delivered by personal hand delivery or mailed by certified mail, return receipt requested, addressed as follows and deemed to be delivered on the day of hand delivery or on the first business day following the date of deposit in the mail, or by facsimile with confirmation of receipt:

        If to Lender:        Joann Glussich
                                    79 Chelsea Court
                                    Saddle River, NY 07663

        With a copy to:    Norman D. Kallen, Esq.
                                    Brown, Moskowitz & Kallen, P.C.
                                    75 Main Street, Suite 203
                                    Millburn, NJ 07041

        If to Borrower:    Hayden-Harnett, LLC
                                    44 Ash Street
                                    Brooklyn, NY 11222
                                    Attention: Benjamin Harnett

        With a copy to:    Michael D. Steger, Esq.
                                    Law Offices of Michael D. Steger, PC
                                    30 Ramland Road, Suite 201
                                    Orangeburg, NY 10962

or to such other address as the respective party or its successors or assigns may subsequently designate by proper notice hereunder.

**SECTION 12.** <u>**No Waiver; Remedies.**</u> No failure on the part of Lender to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other night. The remedies herein provided are cumulative and not exclusive of any other remedies that may otherwise be available to Lender by law or contract.

**SECTION 13.** <u>**Binding Effect.**</u> This Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective heirs, personal representatives, successors and assigns, except that Borrower shall not have the right to assign any rights hereunder without the prior written consent of Lender.



SECTION 14. **Execution in Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which, taken together, shall constitute but one and the same agreement.

SECTION 15. **Severability of Provisions.** Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 16. **Headings.** The headings preceding the text of this Agreement are inserted solely for convenience of reference and shall not constitute a part of this Agreement, nor affect its meaning, construction or effect.

SECTION 17. **Duration of Agreement.** This Agreement, and the security interests and other liens hereunder, shall remain in full force and effect until full and final payment and performance of all of the Obligations.

**IN WITNESS WHEREOF**, and in consideration of the agreements contained herein and intending to be legally bound hereby, Borrower has caused this Agreement to be executed by its sole members as of the date first above written.

WITNESS:                                       HAYDEN-HARNETT, L.L.C.
                                               A New York limited liability company

                                               _____
                                               Benjamin Harnett, Member

                                               _____
                                               Toni Hacker, Member